No. 18,847.

C. H. GEORGE, *Appellee,* v. DR. L. W. SHANNON, *Appellant.*

SYLLABUS BY THE COURT.

1. PHYSICIAN—*Malpractice—Proper Basis for Questions to Expert Witness.* Testimony of a physician, so far as it is expert testimony, may be based upon personal examination or upon the facts proved upon a trial or upon both such examination and proven facts, or, preferably, it may be based upon hypothetical questions.

2. SAME—*Discharge of Physician—Not Contributory Negligence.* The mere fact that a patient discharges or quits the care of his attending physician and employs another physician, is not evidence of contributory negligence in an action by the patient against the former physician for negligence in the discharge of his duty to the patient.

Appeal from Brown district court; WILLIAM I. STUART, judge. Opinion filed July 7, 1914. Affirmed.

*Edwin D. McKeever,* of Topeka, *W. F. Means,* and *F. M. Pearl,* both of Hiawatha, for the appellant.

*J. J. Baker,* of Troy, *F. W. Paschal,* of St. Joseph, Mo., and *S. F. Newlon,* of Hiawatha, for the appellee.

51—92 KAN.

The opinion of the court was delivered by

SMITH, J.: This action was brought to recover damages from a physician for the alleged negligent and unskillful use of an X-ray machine in taking pictures of a portion of the body of the appellee, his patient. It was alleged that appellant as such physician advised appellee that such pictures were necessary to enable appellant to make a proper diagnosis of appellee's malady; that appellant used the machine on four different dates between and including October 28 and November 13, 1911; that he made too many exposures of appellee's body to the rays of the machine and placed the tube or bulb of the machine too close to appellee's body and negligently failed to cover the abdomen of appellee or in any manner to protect it from the injurious effects of such rays; that by reason of the unskillful, careless and negligent use of such machine upon the body of the appellee there developed, about November 15, 1911, a sore place known as a third-degree X-ray burn on appellee's abdomen, which is incurable.

Further, that by reason of the fact stated the appellee has suffered, is suffering and will long continue to suffer intense bodily pain and mental anguish; that prior to receiving such injuries appellee was in good health, except the trouble in his back, and was earning fifty dollars per month; that by reason of the injuries the appellee is wholly incapacitated from labor of any kind and from earning any wages; that appellee has been compelled thereby to employ physicians to treat such injuries and has expended $300 therefor; that appellee has been damaged by the gross negligence of appellant in such treatment in the sum of $10,550.

The appellant in answer made a general denial, alleged that he was a regular practicing physician and surgeon; that appellee came to him for treatment for some kidney trouble; that he made a careful physical

George v. Shannon.

examination but found that in the exercise of ordinary skill and care he could not determine by such examination definitely the disease of which appellee was afflicted —whether or not appellee had a stone in the kidney— except -by the application of the X-ray by which a photograph of the kidney could be taken, and so informed appellee; that appellee agreed that the X-ray photograph should be taken, and it was done; that the X-ray was applied in a scientific manner and according to the most approved manner; that if any injury resulted it was not through any fault, negligence or want of skill of appellant but on account of appellee's susceptibility to X-ray action, which could not in the exercise of ordinary care, caution and skill have been ascertained; that upon the application of the X-ray he requested appellee to return to him for further treatment, and if any burn developed as a result of the operation it was through appellee's own fault and negligence and through his failure to follow the instructions to return to appellant for further treatment and not through any fault, negligence or want of care of the appellant, and if such burn has failed to heal such failure has been caused by the negligence of the appellee; that at and for a long time prior to such examination the appellee had been afflicted with kidney trouble and whatever pain or loss of time appellee has suffered has been the result of such ailment and not the result of any examination by appellant.

The reply was a general denial.

The first objection urged upon the trial was as to the admissibility of the expert testimony of Doctor Kenney. Preliminary questions had been asked as follows:

"Q. Do you know anything of the history of the case Doctor? A. I questioned the patient, Mr. George.

"Q. Did he relate to you the history of the case? A. He and his Dr. Campbell.

"Q. Was the conversation with his Dr. Campbell in the presence of Mr. George? A. Yes, sir.

"By the Court:

"Q. Did you hear the testimony of Mr. George when he was on the witness stand this afternoon? A. Yes, sir.

"Q. Did you hear the testimony of Dr. Campbell on the witness stand? A. Yes, sir.

"Q. Have you heard the testimony of these other witnesses who testified this evening regarding his condition at the time he was sick? A. Yes, sir."

Thereupon the following question was asked by appellee's attorney:

"Q. I will repeat the question: Bearing in mind the time the burn first appeared on the person injured, about November 12, 1911, and the condition at this time as you discovered in your examination, and the history of the case, what would you say as to the possibility of its ever healing?"

To which question the following objection was made:

"Objected to as incompetent, irrelevant and immaterial, no proper foundation laid, and assuming a state of facts which only the jury can determine the truth of the matter. Overruled. Defendant excepting. And further objection, the testimony involves the statement of different witnesses who have not been testifying to exactly the same thing, and necessarily calls upon this witness to say what the fact is that those witnesses have testified to. Overruled. Defendant excepting.

"A. Well, there is a possibility of its healing."

It had also appeared from the evidence that the witness had examined the burn upon appellee's body, and that he had heard the evidence of witnesses who had preceded him, including the appellee and his attending physician. It is insisted by appellant that the witness should have been examined upon hypothetical questions. In *A. T. & S. F. Rld. Co. v. Frazier*, 27 Kan. 463, it was said:

"It is insisted that the testimony of a physician, so far as it is expert testimony, must be based either upon personal examination or upon the facts as proved before the jury, or else upon an hypothetical statement. Doubtless this proposition is correct." (p. 465.)

The physician in this case had heard the details of the application of the X-ray and its effect in the burn, testified to by the appellee and by other witnesses, and he had examined the burn. There is nothing to indicate that he based his opinions upon the talk he had had with the appellee or the attending physician. There was no dispute in the evidence as to the fact that the appellant applied the X-ray to appellee's body and that the burn resulted therefrom. He had also examined the burn, its extent, and observed its appearance. He had heard the undisputed evidence as to the number of applications and the time that had elapsed subsequent thereto and prior to the examination by the witness. Probably it is better in such a case to propound hypothetical questions, but expert evidence based upon personal examination by a physician and upon his hearing the sworn testimony of witnesses at a trial is permissible, as we have seen.

The testimony of the witnesses which the physician had heard upon the question of the application of the X-ray and of the resulting burn and the length of time it had been upon appellee's body is not very lengthy, and was practically all to about the same effect.

It is contended that the court erred in permitting the appellee to recall Doctor Kenney after the appellant had introduced his evidence in defense and had rested; also in permitting hypothetical questions to be propounded to Doctor Kenney as to what, in his opinion, caused the burn. It is said that this is a repetition of the same evidence he had given in the appellees' main case and should have been introduced in the direct case. This is a matter which rests in the sound discretion of the court, and if the appellant had applied therefor the court undoubtedly would have exercised its discretion in permitting the appellant to repeat or offer further evidence in regard to his defense and rebuttal. No such request was made. While the proceeding was somewhat irregular, we think it is not ground for re-

versal. The court may have had doubts whether the physician did not in some measure base his opinion upon the talk he had had with the appellee and the attending physician and permitted the hypothetical questions to exclude this element.

It is also correctly contended by the appellee that the hypothetical question to the physician was based, in part, upon certain evidence offered by the appellant, which contradicted the testimony of appellee as to the distance the machine was from the body of the appellee when the exposures were made, the number of exposures, etc. These elements could not have been put into a hypothetical question before such witnesses had testified.

Again, it is contended that the court erred in giving instruction No. 6, which reads:

"6. A physician is not released from liability for the burning of a patient by the use of the X-Ray by the fact that the patient quit the treatment of the physician after said patient was burned by the use of said X-Ray, and before said physician was willing that such patient should do so, or that said patient neglected to follow the instructions of the physician as to the use and care of the affected parts."

The instructions were evidently taken from *Sauers v. Smits*, 49 Wash. 557, 95 Pac. 1097, 17 L. R. A., n. s., 1242. In the latter publication there is an extended note to the case. It is contended that this instruction amounts to a departure from the rule of contributory negligence, but we do not concur in this view. The evidence shows that the appellee continued under the professional care of the appellant for a long time after the burn was inflicted, and the evidence is that it grew no better but continually worse. The mere fact of discharging a physician or quitting his care and employing another physician by a patient who believes he has been injured by the negligence of the former physician is not in itself evidence of contributory negligence, and there seems to be no other evidence of

George v. Shannon.

negligence on the part of the appellee. We find no error in the instruction. If any act of the appellee had been shown by the evidence to have caused an aggravation of the injury such evidence would probably have been pertinent in mitigation of damages, but the mere fact of the change of physicians does not raise the presumption that damages were increased thereby.

It is also contended that the court erred in giving instruction No. 7, which reads:

"7. If you believe from the evidence in this case that it is proper for the purpose of diagnosis for a physician to use an X-Ray machine for the purpose of taking pictures, and that when proper instrumentalities and proper care are used that the burning of the patient is not a necessary result of the taking of said X-Ray pictures, then the fact that the patient was severely burned by X-Ray while such pictures were being taken, is a circumstance that may be taken into consideration in determining the questions of the physician's skill and carefulness, or the want of it in taking such picture. And in this case, if you believe from the evidence that it was proper for the defendant in diagnosing the plaintiff's case to use an X-Ray machine to take pictures of plaintiff's kidney, and that in the taking of such pictures the burning of plaintiff was not necessary, but did result, then that fact may be considered by you in determining whether or not the defendant's use of said X-Ray was negligent, careless or unskillful."

The effect of the instruction is that if the jury believed from the evidence that it was proper for the purpose of diagnosis for the physician to use an X-ray machine for the purpose of taking pictures, and when proper instrumentalities and proper care are used that the burning of the patient is not a necessary result of such taking, then the fact (which was not in dispute) that the patient was severely burned may be considered by the jury in determining whether or not appellant's use of the X-ray was negligent, careless or unskillful. Reduced to a sentence, it is this: If the taking of such pictures in a

proper and careful manner does not necessarily result in injury, then the fact that injury did result is some evidence (which may be rebutted) that proper care and skill were not exercised. We find no error in the instruction.

The defense was that the appellee was unusually susceptible to injury from the X-ray, and the question was submitted to the jury, whether the injury resulted from such susceptibility or from want of care. Questions Nos. 5 and 6, submitted to the jury, and the answers thereto, read:

"5. Did he exercise ordinary skill and care in the use of the X-Ray upon the plaintiff in endeavoring to diagnose the disease with which the plaintiff was afflicted? Answer. No.

"6. Did he use his best judgment as to the manner and extent of the application of the X-Ray on the plaintiff? Answer. No."

The answers to these questions constitute a direct finding of want of due care, and negligence.

It is contended that the court erred in holding that the verdict was sustained by sufficient evidence. In defense appellant produced the testimony of a number of physicians, who were X-ray operators, which tended to show that a burn would not be expected by the use of an X-ray with less than two or three times the amount of current actually used in this case as shown by the testimony. On the other hand, there was evidence that the use made of the X-ray machine and current would be expected in ordinary cases to inflict the burn which the appellee suffered. Upon such conflicting evidence it was the especial province of the jury to determine the fact.

This is a question of science in which the average juryman has no special knowledge to enable him to test the credibility and accuracy of testimony; still it does not follow that the mere number of witnesses on either side determines the preponderance of the evidence, but the general rule must apply that where

the jury determined the weight of conflicting evidence and the trial court approved the verdict and rendered judgment thereon this court will not reverse the judgment even though it might appear to it that the preponderance was on the other side.

The judgment is affirmed.